IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| TERRY LUTO SEMILLA DORSEY | : | |
| Plaintiff, | : | |
| v. | : | CIVIL ACTION NO. L-06-2041 |
| | : | |
| R.N. DONNA RILEY | : | |
| DR. ZERABRUCK TEWELDE | : | |
| Defendants. | : | |

**MEMORANDUM**

This is a 42 U.S.C. § 1983 complaint for damages. Pending before this Court are: (i) Dr. Zerabruck Tewelde's ("Tewelde") and Nurse Donna Riley's ("Riley") Motions to Dismiss, or in the Alternative, Motions for Summary Judgment,[1] and (ii) Terry Luto Semilla Dorsey's ("Dorsey") Motion to Withdraw his Complaint against Riley. The issues have been fully briefed and no oral argument is necessary. See Local Rule 105.6. (D. Md. 2004). For the foregoing reasons, the Court will, by separate Order, GRANT Tewelde's Motion for Summary Judgment, GRANT Dorsey's Motion to Withdraw the complaint against Riley, and DIRECT the Clerk to CLOSE the case.

**I. Background**

Dorsey alleges that on the afternoon of July 31, 2006, three days into a prison hunger strike, he passed out in his cell at the Maryland Correctional Adjustment Center ("MCAC") from heat exhaustion and dehydration. (Docket No. 1). He claims that Riley was brought to his cell to check on his medical status, but refused to treat him. (Id.). Plaintiff further states that when taken to the dispensary the following morning Riley voiced general indifference to his care. (Id.).

---

[1] Defendants have relied on materials outside the scope of the pleadings in seeking judgment in their favor. Where necessary, the Court has considered those materials. Consequently, Defendants' dispositive motions have been converted to motions for summary judgment. See Fed. R. Civ. P. 12(b).

Dorsey's claims against Dr. Tewelde are straightforward. He alleges that Tewelde failed to refer him to a specialist for foot, skin, and right index finger problems.[2]

## II. Dorsey's Motion to Withdraw

Dorsey has filed a Motion to Withdraw his Complaint against Riley. There being no opposition, the Motion shall be granted.

## III. Tewelde's Motion for Summary Judgment

### A. Standard of Review

Summary judgment may be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); see also Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987) (recognizing that trial judges have "an affirmative obligation" to prevent factually unsupported claims and defenses from proceeding to trial). Nevertheless, in determining whether there is a genuine issue of material fact, the Court views the facts, and all reasonable inferences to be drawn from them, in the light most favorable to the non-moving party. See Pulliam Inv. Co. v. Cameo Properties, 810 F.2d 1282, 1286 (4th Cir. 1987).

### B. Analysis

Title 42 U.S.C. § 1983 authorizes a plaintiff to bring a civil suit against anyone "acting under color of state law" who has deprived him of a right, privilege or immunity secured by the Constitution, laws or treaties of the United States. As a private physician under contract to

---

[2] Dorsey's claim regarding his finger was raised for the first time in his Opposition. (Docket No. 11).

provide medical services to State inmates, Tewelde is acting under "color of state law" and is a proper defendant with regard to Dorsey's § 1983 medical claims.[3]

In order to succeed on his Eighth Amendment claims, Plaintiff must prove the following two elements: (i) that he has serious medical conditions,[4] and (ii) that Tewelde knew that there was a risk of harm if the conditions did not receive treatment and nevertheless ignored that risk.[5] Tewelde seeks summary judgment, alleging that Plaintiff has received constitutionally adequate care.

**i. Fallen Arches**

Dorsey alleges that Tewelde deprived him of adequate medical care by refusing to refer him to a podiatrist for "special shoes and/or insteps to support his arches." Flat feet or fallen arches, however, is not a serious medical condition. See Johnson v. Medford, 208 F. Supp. 2d. 590, 592 (W.D. N.C. 2002). Dorsey does not allege that his fallen arches significantly affect his daily activities or cause him chronic and substantial pain. Moreover, Dorsey does not dispute that Tewelde examined his feet on at least two occasions, determining that neither a referral nor special shoes was necessary. Dorsey has presented no evidence tending to contradict Tewelde's

---

3 See West v. Atkins, 487 U.S. 42, 54 (1988).

4 See Hudson v. McMillian, 503 U.S. 1, 9 (1992); Estelle v. Gamble, 429 U.S. 97, 105 (1976); Johnson v. Quinones, 145 F.3d 164, 167 (4th Cir. 1998); Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995). A serious medical need is one that poses a substantial risk of serious injury to health and safety. See Young v. City of Mount Ranier, 238 F.3d 567, 576 (4th Cir. 2001). This Circuit has further defined "serious medical need" as a medical need "sufficiently serious....to require medical treatment." Brice v. Virginia Beach Correctional Ctr., 58 F.3d 101, 104 (4th Cir. 1995).

5 Dorsey must prove that Tewelde "knows of and disregards an excessive risk to inmate health and safety; [Tewelde] must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). Tewelde is not, however, liable if he "knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent." Id. at 844; see also Johnson v. Quinones, 145 F.3d 164,167 (4th Cir. 1998).

opinions. His disagreement with Tewelde's treatment is not actionable.[6] See Estelle v. Gamble, 429 U.S. 97, 107 (1976); Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985)). Accordingly, the claim fails.

**ii. Rashes**

Dorsey also alleges that Tewelde refused to refer him to a dermatologist concerning rashes caused by the only deodorant soap available to him through the prison commissary. Rashes, unaccompanied by any other evidence of a more severe medical problem, are not serious medical conditions.[7] See Ware v. Fairman, 884 F.Supp. 1201, 1206 (N.D. Ill. 1995); Tsakonos v. Chicci, 2006 WL 1373159, *5 (D. N.J. 2006) (slip op.). Indeed, Dorsey does not describe the rash as anything other than an inconvenience. Moreover, Dorsey has failed to show that Tewelde was deliberately indifferent to this condition. Tewelde examined Dorsey's skin on several occasions. By affidavit, Tewelde explains that on July 4, 2006, he noted that he would refer Dorsey to a dermatologist should it become necessary. Tewelde saw Dorsey twelve days later, and the rash appeared to have cleared up. Accordingly, Tewelde is entitled to judgment on this claim.

---

[6] Dorsey alleges that on April 21, 2006, he was seen for his flat feet and explained to Tewelde that another doctor, Dr. Lane, had previously prescribed him orthotic shoes or insteps in November of 2005. Tewelde disagreed with Lane's assessment. On June 14, 2006, Dorsey again complained to Tewelde. On that date, Tewelde examined Dorsey's feet, saw no deformity or physical signs or symptoms that would require special shoes, and determined that a referral to a podiatrist was unnecessary. Tewelde scheduled Dorsey for a follow-up appointment in three months. On July 1and August 1, 2006, Dorsey filed other sick call requests regarding his feet. The parties do not provide information about what occurred during those visits. According to Tewelde's Affidavit, on September 1, 2006, he transferred to other prison facilities in the Baltimore region and no longer administers care to inmates at MCAC.

[7] Dorsey's rashes, though recurrent, appear to be of very short duration and severity. For example, Dorsey complained again about a rash on July 2, 2006. Tewelde examined him on July 4, 2006, observing "old rashes on the neck and chest area. No signs of redness or infection were noted." Dorsey saw Tewelde again on July 14, 2006. Dorsey did not complain of a rash, and Tewelde did not observe one.

**iii. Index Finger**

In his eleventh-hour claim, Dorsey alleges that Tewelde refused to prescribe him therapy, or refer him to a specialist, for a lingering right index finger injury. The right finger "laxity," apparently caused by a "crush" injury with a weight in 2005, seems to intermittently affect the finger's range of motion ("ROM").[8] There is no evidence that this problem is severe in nature. Dorsey has not demonstrated that this condition seriously affects his daily activities or causes him chronic and substantial pain. Further, regardless of the seriousness of Plaintiff's injury, he has failed to show that Tewelde acted with the culpable state of mind required to establish an Eighth Amendment violation. Dorsey was seen by Tewelde for his complaints about the ROM of the index finger. Tewelde found that Dorsey could straighten his other fingers and noted that there was no sign of the finger "being inactive that is to say that there is no sign on atrophy."[9] Therefore, this claim fails.

Dorsey has failed to demonstrate the existence of serious medical conditions as well as the risk of harm if the conditions were not treated and intentional failure to provide care. He has, at most, demonstrated a disagreement with the decisions made by Tewelde, nothing more.[10]

---

[8] On June 14, 2006, Dorsey complained that he could not straighten the finger. On July 1 and 2, 2006, he complained that he could not ball it up.

[9] According to Dorsey's Opposition, on April 21, 2006, he requested that Tewelde have his finger problem addressed by a specialist. He alleges that Tewelde explained that "you don't need a physical therapist you can do that yourself[,] that would be wasting the state's money." Dorsey alleges that Tewelde again made reference to the state's budget during an examination on or about July 1, 2006.

[10] Dorsey also has a history of asthma. He does not contend that Tewelde failed to treat this condition and the record establishes that on June 14, 2006, Tewelde examined Plaintiff in the Chronic Care Clinic for a follow-up concerning Plaintiff's asthma and found that the condition was under control.

## IV. Conclusion

For the foregoing reasons, the Court will, by separate Order:

(i) GRANT Tewelde's Motion for Summary Judgment;

(ii) ENTER judgment in favor of Tewelde and against Dorsey;

(iii) GRANT Dorsey's Motion to Withdraw;

(iv) DISMISS Riley's Motion for Summary Judgment;

(v) DISMISS the Complaint against Riley without prejudice; and

(vi) DIRECT the Clerk to CLOSE the case.

Dated this 16th day of July 2007.

/s/

Benson Everett Legg
Chief Judge